1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL E. WALKER, II, | ) 1:11-cv—00585-AWI-SKO-HC |
| | ) |
| Petitioner, | ) ORDER DIRECTING THE CLERK TO |
| | ) SUBSTITUTE WARDEN P. D. BRAZELTON |
| | ) AS RESPONDENT (DOC. 28) |
| v. | ) |
| | ) FINDINGS AND RECOMMENDATIONS TO |
| P. D. BRAZELTON, Warden, | ) GRANT RESPONDENT'S MOTION TO |
| | ) DISMISS THE PETITION (DOC. 28) |
| Respondent. | ) |
| | ) FINDINGS AND RECOMMENDATIONS TO |
| | ) DISMISS THE PETITION AS UNTIMELY, |
| | DECLINE TO ISSUE A CERTIFICATE OF |
| | APPEALABILITY, AND DIRECT THE |
| | CLERK TO CLOSE THE CASE |

Petitioner is a state prisoner proceeding pro se and in forma pauperis pursuant to 28 U.S.C. § 2254 with a third amended petition that was filed on June 6, 2012 (doc. 22). The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Pending before the Court is Respondent's motion to dismiss the petition as untimely, which was filed on August 6, 2012, along with supporting documentary exhibits. Petitioner filed an opposition on August 22, 2012. Respondent filed a reply on September 4, 2012.

1

1  Petitioner filed an amended opposition on October 1, 2012.
2  Although the Court granted Respondent leave to reply to the
3  supplemental opposition, no supplemental reply was filed.

4      I.   Substitution of Respondent

5      Petitioner named Domingo Uribe, Jr., Warden of Pleasant
6  Valley State Prison (PVSP), as Respondent.  However, in the
7  motion to dismiss, Respondent informed the Court that the current
8  warden of PVSP is P. D. Brazelton and requested that the Court
9  substitute P. D. Brazelton as Respondent pursuant to Fed. R. Civ.
10 P. 25(d), which provides that a court may at any time order
11 substitution of a public officer who is a party in an official
12 capacity whose predecessor dies, resigns, or otherwise ceases to
13 hold office.

14     The Court concludes that P. D. Brazelton, Warden of PVSP, is
15 an appropriate respondent in this action, and pursuant to Fed. R.
16 Civ. P. 25(d), he should be substituted in place of Warden Uribe.
17 Accordingly, the Clerk is ORDERED to substitute Warden P. D.
18 Brazelton as Respondent.

19     II.   Proceeding by a Motion to Dismiss

20      Respondent has filed a motion to dismiss the petition on
21 the ground that Petitioner filed his petition outside of the one-
22 year limitation period provided for by 28 U.S.C. § 2244(d)(1).

23     Rule 4 of the Rules Governing Section 2254 Cases in the
24 United States District Courts (Habeas Rules) allows a district
25 court to dismiss a petition if it "plainly appears from the face
26 of the petition and any exhibits annexed to it that the
27 petitioner is not entitled to relief in the district court...."
28 ///

1    The Ninth Circuit permits respondents to file motions to
2    dismiss pursuant to Rule 4 instead of answers if the motion to
3    dismiss attacks the pleadings by claiming that the petitioner has
4    failed to exhaust state remedies or has violated the state's
5    procedural rules.  See, e.g., O'Bremski v. Maass, 915 F.2d 418,
6    420 (9th Cir. 1990) (motion to dismiss a petition for failure to
7    exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03
8    (9th Cir. 1989) (motion to dismiss for state procedural default);
9    Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982)
10   (same).  Thus, a respondent may file a motion to dismiss after
11   the Court orders the respondent to respond, and the Court should
12   use Rule 4 standards to review a motion to dismiss filed before a
13   formal answer.  See, Hillery, 533 F. Supp. at 1194 & n.12.

14   Here, Respondent's motion to dismiss addresses the
15   untimeliness of the petition pursuant to 28 U.S.C. 2244(d)(1).
16   The material facts pertinent to the motion are contained in
17   copies of the official records of state judicial proceedings
18   which have been provided by Respondent and Petitioner, and as to
19   which there is no factual dispute.  Because Respondent has not
20   filed a formal answer, and because Respondent's motion to dismiss
21   is similar in procedural standing to a motion to dismiss for
22   failure to exhaust state remedies or for state procedural
23   default, the Court will review Respondent's motion to dismiss
24   pursuant to its authority under Rule 4.

25   III. Background

26   On October 18, 2006, in case number 1091957 in the Superior
27   Court of the State of California, County of Stanislaus (SCSC),
28   Petitioner was convicted of two counts of attempted murder, four

3

counts of assault with a deadly weapon, one count of assault with a firearm, two counts of discharging a firearm at an occupied motor vehicle, one count of brandishing a firearm at a peace officer, one count of resisting arrest, one count of being an ex-felon in possession of firearm, and one count of evading a peace officer.  Further, numerous enhancements were found true.  (LD 1.)[1]  On December 12, 2006, Petitioner was sentenced to a total determinate term of fifty-seven years plus two consecutive, indeterminate terms of twenty-five years to life in prison.  (Id.; LD 2, 2.)

On May 20, 2009, the Court of Appeal of the State of California, Fifth Appellate District (CCA) affirmed the judgment on appeal.  (LD 2.)

On June 15, 2009, Petitioner filed a petition for review in the California Supreme Court (CSC).  (LD 3.)  On July 29, 2009, the CSC denied the petition for review without a statement of reasoning or citation of any authority.  (LD 4.)

On October 1, 2010, Petitioner filed in the SCSC a petition for writ of habeas corpus.[2]  (LD 5.)  The Petitioner's address as

---

[1] "LD" refers to documents lodged by Respondent in support of the motion to dismiss.

[2] Under the mailbox rule, a prisoner's pro se habeas petition is "deemed filed when he hands it over to prison authorities for mailing to the relevant court." Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001); Houston v. Lack, 487 U.S. 266, 276 (1988); see, Habeas Rule 3(d).  The mailbox rule applies to federal and state petitions alike.  Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citing Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th. Cir. 2003), and Smith v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)).  It has been held that the date the petition is signed may be inferred to be the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule. Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other grounds, Pace v. DiGuglielmo, 544 U.S. 408 (2005).
    Here, Petitioner's signature on the petition form is next to a typed date of October 1, 2010; it thus appears that Petitioner signed the petition on October 1, 2010.  (LD 5 at petition form's handwritten page number 37.)

4

1 set forth on the petition is Mr. Michael E. Walker, II T-60396,

2 P. O. Box. 931, D-3, 129, Imperial, CA 92251.  (Id. at 1.)   On

3 December 22, 2010, the SCSC denied the petition in a reasoned

4 decision on the merits that did not refer to or determine the

5 timeliness of the petition.  (LD 6.)  Attached to the order of

6 denial is a certification and declaration under penalty of

7 perjury of a deputy clerk of the Office of the Superior Court

8 Administrator that on December 27, 2010, a copy of the order

9 denying the petition was placed in an envelope addressed to

10 Petitioner as follows: "Micheal (sic) Edward Walker, II T-60396;

11 P. O. Box 931 D-3, 129; Imperial, CA 92251."[3]  The deputy clerk

12 further declared that the envelope was sealed, postage fully

13 prepaid, and deposited in the United States Mail at Modesto,

14 California, on the same date.  (Id.)

15    On May 3, 2011, Petitioner filed in the SCSC a notice and

16 request for ruling in the habeas corpus action in which he

17 referred to the petition that he had filed on or about October 1,

18 2010, in the SCSC.  He requested a ruling on the petition with a

19 citation to state rules of court that he contended required a

20 ruling by the court within sixty (60) days following the filing

21 of a petition, or within thirty (30) days of assignment to a

22 judge.  (Opp., doc. 31 at 10-11.)  Included in Petitioner's

23 request was a declaration made under penalty of perjury by

24 
25 Petitioner again referred to the date of October 1, 2010, in his later notice
and request for ruling.  (Opp., doc. 31, 10.)  The Court therefore infers that
October 1, 2010, as the earliest possible date Petitioner could have submitted
26 his petition to prison authorities for mailing, as the date of filing of the
petition.

27
28 [3] The Petitioner's petition and the caption of the case in the SCSC's
order of denial reflected the same spelling of Petitioner's name.  (LD 5 at 1,
LD 6 at 1.)

5

1  Petitioner on May 3, 2011.  In the declaration, Petitioner

2  declared that he had not received a ruling on the petition and

3  was therefore causing the notice and request for ruling to be

4  filed.  (Opp., doc. 31 at 12.)  Petitioner likewise completed a

5  declaration of service of the notice and request on the SCSC

6  clerk and the state attorney general.  (Id. at 13.)  Petitioner's

7  address as set forth on the notice and request for ruling is

8  Michael Walker II, CDCR # 60369, P.O. Box 931, 2302 Brown Road,

9  Centinela State Prison, Imperial, CA 92251-0931. (Id. at 10.)  It

10  thus appears that in his post-ruling communications with the

11  SCSC, Petitioner's CDCR number as set forth on the SCSC petition,

12  namely, 60396, was modified by reversing the order of the last

13  two digits to 60369, the CDCR number appearing on the docket in

14  the present proceeding.

15      On May 23, 2011, the SCSC issued an order noting receipt of

16  Petitioner's notice and request for ruling on or about May 13,

17  2011, and stating that the court had denied the petition in an

18  order dated December 22, 2010.  The court attached to the order a

19  copy of the earlier order of denial.  (Opp., doc. 31 at 15.)  A

20  proof of service of the court's response to the request for

21  ruling, executed on May 26, 2011, indicates that it was mailed to

22  Petitioner on May 26, 2011.  The address to which it was sent is

23  Michael Walker II, CDCR # T-60369, P. O. Box 931, Centinela State

24  Prison, Imperial, CA 92251-0931  (LD 7, att. A.)

25      The amended opposition contains a copy of Petitioner's legal

26  mail log from the Centinela State Prison mail room.  (Doc. 33,

27  Ex. D, 17-22.)  Respondent has not objected to the Court's

28  consideration of the log.  The Court will consider the log; thus,

it is unnecessary for the Court to consider Petitioner's request
that the Court take judicial notice of the log.  The period of
time covered by the portion of the log submitted to the Court is
February 8, 2011, through September 12, 2012.  The log reflects
outgoing mail to the SCSC clerk in Modesto on March 29, 2011 (id.
at 20), April 11, 2011 (id. at 19), and May 9, 2011 (id. at 21).
It reflects receipt of items from the SCSC that were mailed on
April 21, 2011, and May 31, 2011.  (Id. at 20.)

On June 6, 2011, Petitioner filed a petition for writ of
habeas corpus in the CCA.  (LD 7, petition form at added,
handwritten page number 37, and proof of service on following
page.)  On July 7, 2011, the CCA denied the petition without a
statement of reasoning or citation of authority.  (LD 8.)

On December 1, 2011, Petitioner filed a petition for writ of
habeas corpus in the CSC.  (LD 9, petition form p. 6.)  On April
11, 2012, the CSC denied the petition for writ of habeas corpus
without a statement of reasoning or citation of authority.  (LD
10.)

A search of the official website of the California courts
reflects that no other cases were filed by Petitioner in the CCA
or CSC that corresponded with the pertinent convictions.[4]

Petitioner filed his original petition in this Court on

---

[4] The Court may take judicial notice of facts that are capable of
accurate and ready determination by resort to sources whose accuracy cannot
reasonably be questioned, including undisputed information posted on official
websites.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331,
333 (9th Cir. 1993); Daniels-Hall v. National Education Association, 629 F.3d
992, 999 (9th Cir. 2010).  It is appropriate to take judicial notice of the
docket sheet of a California court.  White v Martel, 601 F.3d 882, 885 (9th
Cir. 2010), cert. denied, 131 S.Ct. 332 (2010).  The address of the official
website of the California state courts is www.courts.ca.gov.

April 11, 2011.  (Doc. 1.)

    IV.  <u>Limitation Period for Filing a Petition for Writ of Habeas Corpus</u>

    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA applies to all petitions for writ of habeas corpus filed after the enactment of the AEDPA.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), <u>cert.</u> <u>denied</u>, 118 S.Ct. 586 (1997).  Petitioner filed his original petition for writ of habeas corpus on or about April 11, 2011.  Thus, the AEDPA applies to the petition.

    The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, subdivision (d) reads:

    (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent

judgment or claim is pending shall not be counted
toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

V.   Commencement of the Running of the Statute

Here, pursuant to § 2244(d)(1)(A), the limitation period
runs from the date on which the judgment became final.

Under § 2244(d)(1)(A), the "judgment" refers to the sentence
imposed on the petitioner. Burton v. Stewart, 549 U.S. 147, 156-
57 (2007). The last sentence was imposed on Petitioner on
December 12, 2006.

Under § 2244(d)(1)(A), a judgment becomes final either upon
the conclusion of direct review or the expiration of the time for
seeking such review in the highest court from which review could
be sought. Wixom v. Washington, 264 F.3d 894, 897 (9th Cir.
2001). The statute commences to run pursuant to § 2244(d)(1)(A)
upon either 1) the conclusion of all direct criminal appeals in
the state court system, followed by either the completion or
denial of certiorari proceedings before the United States Supreme
Court; or 2) if certiorari was not sought, then upon the
conclusion of all direct criminal appeals in the state court
system followed by the expiration of the time permitted for
filing a petition for writ of certiorari. Wixom, 264 F.3d at 897
(quoting Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998),
cert. denied, 525 U.S. 1187 (1999)). Neither party has indicated
that Petitioner sought certiorari from the United States Supreme
Court.

Here, Petitioner's direct criminal appeals in the state
court system concluded when his petition for review was denied by

9

1  the California Supreme Court on July 29, 2009.  The time

2  permitted for seeking certiorari was ninety days.  Supreme Court

3  Rule 13; Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999).

4       The Court will apply Fed. R. Civ. P. 6(a) in calculating the

5  pertinent time periods.  See, Waldrip v. Hall, 548 F.3d 729, 735

6  n.2 (9th Cir. 2008), cert. denied, 130 S.Ct. 2415 (2010).

7  Applying Fed. R. Civ. P. 6(a)(1)(A), the day of the triggering

8  event is excluded from the calculation.  Thus, the ninety-day

9  period commenced on July 30, 2009, the day following the

10 California Supreme Court's denial of review.  Applying Fed. R.

11 Civ. P. 6(a)(1)(B), which requires counting every day, the

12 ninetieth day was October 27, 2009.  Thus, the time for seeking

13 direct review expired on that date.

14      Petitioner argues that the time for seeking direct review

15 expired thirty days later pursuant to Bunney v. Mitchell, 262

16 F.3d 973 (9th Cir. 2001), which held that the one-year

17 limitations period applicable to the habeas petition before the

18 court started thirty days after the California Supreme Court

19 denied the habeas petition before it based on Cal. Rules of

20 Court, Rule 24, which then provided that a denial of a habeas

21 petition was not final for thirty days after the decision.  In

22 contrast, presently a decision of the California Supreme Court

23 denying review of a decision of a Court of Appeal is final upon

24 filing.  Cal. Rules of Court, Rule 8.532(b)(2)(a).  Thus, the

25 California Supreme Court's denial of Petitioner's petition for

26 review filed in case number S174172 on July 29, 2009, was final

27 immediately.

28 ///

1    Therefore, the limitations period began to run on October

2    28, 2009, the day following the expiration of the time for

3    seeking certiorari and, absent any basis for tolling, concluded

4    one year later on October 27, 2010.  Fed. R. Civ. P. 6(a);

5    Patterson v. Stewart, 251 F.3d 1243, 1245-46 (9th Cir. 2001)

6    (holding analogously that the correct method for computing the

7    running of the one-year grace period after the enactment of AEDPA

8    is pursuant to Fed. R. Civ. P. 6(a), in which the day upon which

9    the triggering event occurs is not counted).

10       VI.   Statutory Tolling

11       Title 28 U.S.C. § 2244(d)(2) states that the "time during

12   which a properly filed application for State post-conviction or

13   other collateral review with respect to the pertinent judgment or

14   claim is pending shall not be counted toward" the one-year

15   limitation period.  28 U.S.C. § 2244(d)(2).  Once a petitioner is

16   on notice that his habeas petition may be subject to dismissal

17   based on the statute of limitations, he has the burden of

18   demonstrating that the limitations period was sufficiently tolled

19   by providing the pertinent facts, such as dates of filing and

20   denial.  Zepeda v. Walker, 581 F.3d 1013, 1019 (9th Cir. 2009)

21   (citing Smith v. Duncan, 297 F.3d 809, 814-15 (9th Cir. 2002),

22   abrogation on other grounds recognized by Moreno v. Harrison, 245

23   Fed.Appx. 606 (9th Cir. 2007)).

24       An application for collateral review is "pending" in state

25   court "as long as the ordinary state collateral review process is

26   'in continuance'-i.e., 'until the completion of' that process."

27   Carey v. Saffold, 536 U.S. 214, 219-20 (2002).  In California,

28   this generally means that the statute of limitations is tolled

from the time the first state habeas petition is filed until the
California Supreme Court rejects the petitioner's final
collateral challenge, as long as the petitioner did not
"unreasonably delay" in seeking review.  Id. at 221-23; accord,
Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).  The statute
of limitations is not tolled from the time a final decision is
issued on direct state appeal and the time the first state
collateral challenge is filed because there is no case "pending"
during that interval.  Id.; see, Lawrence v. Florida, 549 U.S.
327, 330-33 (2007) (holding that the time period after a state
court's denial of state post-conviction relief and while a
petition for certiorari is pending in the United States Supreme
Court is not tolled because no application for state post-
conviction or other state collateral review is pending).

     In Carey v. Saffold, 536 U.S. 214, the Court held that an
application is "pending" until it "has achieved final resolution
through the State's post-conviction procedures."  Id. at 220.  An
application does not achieve the requisite finality until a state
petitioner "completes a full round of collateral review."  Id. at
219-20.  Accordingly, in the absence of undue delay, an
application for post-conviction relief is pending during the
"intervals between a lower court decision and a filing of a new
petition in a higher court" and until the California Supreme
Court denies review.  Id. at 223; Biggs v. Duncan, 339 F.3d 1045,
1048 (9th Cir. 2003).

     Here, on October 1, 2010, only twenty-six days before the
one-year limitations period otherwise would have run, Petitioner
filed his petition in the SCSC.  Respondent does not contend that

1  Petitioner's first state habeas petition was improperly filed.
2  Thus, the pendency of the habeas petition in the SCSC tolled the
3  statute from October 1, 2010, through December 22, 2010, the day
4  the SCSC denied the petition.

5      Respondent contends, however, that Petitioner unreasonably
6  delayed after the denial of the SCSC petition on December 22,
7  2010, and before filing the second state habeas petition in the
8  CCA on June 6, 2011; thus, the statute had run by the time that
9  the petition was filed in the CCA, and no further tolling is
10 warranted.

11     Absent a clear direction or explanation from the California
12 Supreme Court about the meaning of the term "reasonable time" in
13 a specific factual context, or a clear indication that a filing
14 was timely or untimely, a federal court hearing a subsequent
15 federal habeas petition must examine all relevant circumstances
16 concerning the delay in each case and determine independently
17 whether the California courts would have considered any delay
18 reasonable so as to render the state collateral review petition
19 "pending" within the meaning of § 2244(d)(2).  Evans v. Chavis,
20 546 U.S. 189, 197-98 (2006).

21     The delay between the denial of the SCSC petition and the
22 filing of the habeas petition in the CCA was approximately five
23 and one-half months.  A delay of six months has been found to be
24 unreasonable because it is longer than the relatively short
25 periods of thirty (30) or sixty (60) days provided by most states
26 for filing appeals.  Evans v. Chavis, 546 U.S. at 201.  Shorter
27 delays, however, have been found to be unreasonable: one hundred
28 forty-six (146) days between the filing of two trial court

1  petitions, <u>Banjo v. Ayers</u>, 614 F.3d 964, 968-69 (9th Cir. 2010),

2  <u>cert. den.</u>, 131 S.Ct. 3023 (2011); intervals of eighty-one (81)

3  and ninety-two (92) days between the disposition of a writ at one

4  level and the filing of the next writ at a higher level,

5  <u>Velasquez v. Kirkland</u>, 639 F.3d 964, 968 (9th Cir. 2011), <u>cert.</u>

6  <u>den.</u>, 132 S.Ct. 554 (2011); unjustified delays of one hundred

7  fifteen (115) and one hundred one (101) days between denial of

8  one petition and the filing of a subsequent petition, <u>Chaffer v.</u>

9  <u>Prosper</u>, 592 F.3d. 1046, 1048 (9th Cir. 2010); and unexplained,

10  unjustified periods of ninety-seven (97) and seventy-one (71)

11  days, <u>Culver v. Director of Corrections</u>, 450 F.Supp.2d 1135, 1140

12  (C.D.Cal. 2006); <u>see</u>, <u>Sok v. Substance Abuse Training Facility</u>,

13  2011 WL 3648474, *4-*5 (No. 1:11-cv-00284-JLT-HC, E.D.Cal. Aug.

14  17, 2011) (finding a 163-day delay unreasonable and noting an

15  apparent consensus emerging in the district courts in California

16  that any delay of sixty days or less is per se reasonable, but

17  that any delay "substantially" longer than sixty days is

18  unreasonable).

19     Here, the CCA summarily denied the petition.  Thus, the CCA

20  did not expressly determine that the petition was untimely.

21  However, considering only the length of the delay, the Court

22  concludes that the delay of over five months was an unreasonable

23  or substantial delay because it far exceeds the customarily short

24  periods of delay considered reasonable.

25     With respect to justification for the delay, to benefit from

26  statutory tolling, a petitioner must adequately justify a

27  substantial delay.  28 U.S.C. § 2244(d)(2); <u>Evans v. Chavis</u>, 546

28  U.S. at 192-93; <u>Waldrip v. Hall</u>, 548 F.3d at 734.

14

In In re Reno, 55 Cal.4th 428, 460-61 (2012), the California Supreme Court summarized the applicable California law as follows:

> Our rules establish a three-level analysis for assessing whether claims in a petition for a writ of habeas corpus have been timely filed. First, a claim must be presented without substantial delay. Second, if a petitioner raises a claim after a substantial delay, we will nevertheless consider it on its merits if the petitioner can demonstrate good cause for the delay. Third, we will consider the merits of a claim presented after a substantial delay without good cause if it falls under one of four narrow exceptions: "(i) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (ii) that the petitioner is actually innocent of the crime or crimes of which he or she was convicted; (iii) that the death penalty was imposed by a sentencing authority that had such a grossly misleading profile of the petitioner before it that, absent the trial error or omission, no reasonable judge or jury would have imposed a sentence of death; or (iv) that the petitioner was convicted or sentenced under an invalid statute." (In re Robbins, supra, 18 Cal.4th at pp. 780-781, 77 Cal.Rptr.2d 153, 959 P.2d 311.) The petitioner bears the burden to plead and then prove all of the relevant allegations. (Ibid.)
>
> The United States Supreme Court recently, and accurately, described the law applicable to habeas corpus petitions in California: "While most States set determinate time limits for collateral relief applications, in California, neither statute nor rule of court does so. Instead, California courts 'appl[y] a general "reasonableness" standard' to judge whether a habeas petition is timely filed. Carey v. Saffold, 536 U.S. 214, 222 [122 S.Ct. 2134, 153 L.Ed.2d 260] (2002). The basic instruction provided by the California Supreme Court is simply that 'a [habeas] petition should be filed as promptly as the circumstances allow....'" (Walker v. Martin, supra, 562 U.S. at p. ----, 131 S.Ct. at p. 1125.) "A prisoner must seek habeas relief without 'substantial delay,' [citations], as 'measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim,' [citation]." (Ibid.; see also In re Robbins, supra, 18 Cal.4th at p. 780, 77 Cal.Rptr.2d 153, 959 P.2d 311 ["Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the

information offered in support of the claim and the legal basis for the claim."].)

<u>In re Reno</u>, 55 Cal.4th at 460-61.  A petitioner must show particular circumstances, based on allegations of specific facts, sufficient to justify the delay; allegations made in general terms are insufficient.  <u>In re Robbins</u>, 18 Cal.4th at 787-88, 805 (citing <u>In re Walker</u>, 10 Cal.3d 764, 774 (1974)).

The Ninth Circuit Court of Appeals has noted that there are no California standards for determining what period of time or factors constitute "substantial delay" in noncapital cases or for determining what factors justify any particular length of delay. <u>King v. LaMarque</u>, 464 F.3d 963, 966 (9th Cir. 2006).  It is recognized that California's time limit for filing a habeas petition in a noncapital case is more "forgiving and flexible than that employed by most states."  <u>Chavis</u>, 546 U.S. at 202 (Stevens, J., concurring).

The Supreme Court has expressly noted that a petitioner's lack of notification of a court's decision for several months and filing the next petition within days after receiving notification are potentially relevant considerations.  <u>Carey v. Saffold</u>, 536 U.S. at 226.  Further, a failure to receive notification from a court that it has ruled on a petition for writ of habeas corpus has been held to be a basis for concluding that a delay in filing a habeas petition in the next higher California court was not unreasonable.  <u>Winston v. Sisto</u>, 2008 WL 2119918, *6-*9 (No. CIV S-07-2284 JAM DAD P, E.D.Cal. May 20, 2008) (unpublished) (finding explained and not unreasonable, and hence statutorily tolled pursuant to § 2244(d)(2), delay resulting from a failure

to receive a notice of a ruling until July 2005 with respect to a petition filed in December 2004 and denied in April 2005, where the Petitioner was transferred, the evidence supported a conclusion that he filed a notice of change of address, and he requested notice of the ruling in April 2005).

However, the delay is measured from the time the petitioner or counsel knew, or reasonably should have known, of the factual information offered in support of the claim and the legal basis for the claim. In re Robbins, 18 Cal.4th at 787. The Robbins standard is that of an objective, reasonable person and requires a demonstration of due diligence in pursuing potential claims. In re Douglas, 200 Cal.App.4th 236, 244 (2011).

Here, Petitioner's declaration that he had not received notice of the SCSC's ruling on May 3, 2011, coupled with the mail log, the SCSC's minute order of May 23, 2011 responding to Petitioner's request for a ruling, and the copy of the envelope from the SCSC with a receipt stamp of May 31, 2011, appear to demonstrate that Petitioner did not actually receive the ruling on his SCSC petition until late May 2011. However, the record likewise supports the Respondent's position that the declaration of mailing made by the deputy clerk of the SCSC establishes that the order denying the petition was mailed to Petitioner at the address Petitioner had listed on the petition. Petitioner has not submitted any mail log evidence that definitively establishes that the prison or Petitioner did not receive any mail from the SCSC during the pertinent time.

Although the record does not contain an express explanation of why Petitioner did not receive the decision that was mailed

17

1  from the SCSC, it is presumed in California that official duties
2  were regularly performed.  Cal. Evid. Code § 664.  Thus, it is
3  presumed that the court clerk mailed the decision and that the
4  mail carriers delivered the decision.  It is possible that the
5  delivery was affected or obstructed by the apparent transposition
6  of the digits in Petitioner's CDCR identification number.  It may
7  reasonably be inferred that Petitioner knew his own prisoner
8  identification number and thus was the party responsible for any
9  error in stating his identifying information on his petition.
10 Further, from the ultimate correction of the number reflected in
11 the later proceedings before this Court, it appears that
12 Petitioner ultimately discovered an error and corrected it.

13      A mistaken belief does not constitute good cause for delay
14 where the petitioner should have known that he needed to act to
15 pursue a claim diligently.  In re Douglas, 200 Cal.App.4th at
16 243-44.  Here, as a reasonable person, Petitioner should have
17 known that he gave incorrect information on his petition.
18 Petitioner has not shown the reasonableness of either his
19 apparent mistake with respect to his identification information
20 or his waiting over five months for receipt of a decision that
21 was apparently mailed from a court that lacked complete and
22 correct identification information.

23      The Court concludes that in this factual context, Petitioner
24 has not shown that he was reasonable and diligent with respect to
25 pursuing his claims.  Petitioner has not shown good cause for the
26 substantial delay in filing his petition in the CCA.  The Court
27 concludes that California courts would have found Petitioner's
28 delay in filing his petition in the CCA was not shown to have

1  been supported by good cause.

2      Accordingly, Petitioner is not entitled to statutory tolling

3  during the interval between the denial of his SCSC petition in

4  December 2010 and his filing of the CCA petition on June 6, 2011.

5      VII.  <u>Equitable Tolling</u>

6      The one-year limitation period of § 2244 is subject to

7  equitable tolling where the petitioner shows that he or she has

8  been diligent, and extraordinary circumstances have prevented the

9  petitioner from filing a timely petition.  <u>Holland v. Florida</u>, –

10  U.S. –, 130 S.Ct. 2549, 2560, 2562 (2010).  Petitioner must

11  provide specific facts to demonstrate that equitable tolling is

12  warranted; conclusional allegations are generally inadequate.

13  <u>Williams v. Dexter</u>, 649 F.Supp.2d 1055, 1061-62 (C.D.Cal. 2009).

14      The petitioner must show that extraordinary circumstances

15  were the cause of his untimeliness and that the extraordinary

16  circumstances made it impossible to file a petition on time.

17  <u>Ramirez v. Yates</u>, 571 F.3d 993, 997 (9th Cir. 2009).  Where a

18  prisoner fails to show any causal connection between the grounds

19  upon which he asserts a right to equitable tolling and his

20  inability to timely file a federal habeas application, the

21  equitable tolling claim will be denied.  <u>Gaston v. Palmer</u>, 417

22  F.3d 1030, 1034-35 (9th Cir. 2005).  The failure of a prisoner or

23  counsel to recognize that a state filing was unreasonably delayed

24  under California law is not the result of an "external force"

25  that rendered timeliness impossible, but rather is attributable

26  to the petitioner as the result of his own actions.  <u>Velasquez v.</u>

27  <u>Kirkland</u>, 639 F.3d 964, 969 (9th Cir. 2011).

28  ///

The diligence required for equitable tolling is reasonable diligence, not "maximum feasible diligence." Holland v. Florida, 130 S.Ct. at 2565.  However, "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Spitsyn v. Moore, 345 F.3d 796, 799 (quoting Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)).

A prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter. Ramirez v. Yates, 571 F.3d at 997.  A delay in receipt of notification of a ruling may serve equitably to toll the running of the statute.  See, White v. Ollison, 530 F.Supp.2d 1077, 1083-84 (C.D.Cal. 2007) (statute equitably tolled for approximately two and one-half months between the superior court's denial of the petitioner's habeas petition and the date on which the petitioner received notice of the court's denial, and collecting authorities); Lewis v. Mitchell, 173 F.Supp.2d 1057, 1061-62 (C.D.Cal. 2001) (statute equitably tolled for five months between a court's ruling and the petitioner's receipt of notice of it where the prison returned the mailed notification of the denial to the state supreme court because the prisoner's prison number did not appear on the envelope, despite the petitioner's having provided her prisoner number to the court); Lopez v. Scribner, 2008 WL 2441362, *7-*9 (No. CV 07-6954-ODW (JTL), C.D.Cal. Apr. 11, 2008) (assuming statute was equitably tolled during the time between a court's denial of a first state habeas petition and the date the petitioner learned of the denial, where the petitioner did not receive notice of the

1    court's September 2006 denial of a petition filed in August 2006
2    until the petitioner sought a ruling in February 2007, and the
3    delay made it impossible for the petitioner to file a timely
4    federal habeas petition).

5        Here, Petitioner has not shown that an extraordinary
6    circumstance caused the delay.  Petitioner has not alleged
7    specific facts demonstrating that the reason for his delay was
8    anything other than his own conduct in putting erroneous
9    information on his petition.  Further, Petitioner has not shown
10   that as a person who apparently put incorrect identification or
11   address information on his petition and then delayed for about
12   six months before seeking any information on the status of the
13   petition, he was reasonably diligent in pursuing relief from the
14   state courts.

15       The Court concludes that Petitioner has not shown that he is
16   entitled to equitable tolling of the statute of limitations with
17   respect to his delay in filing the petition in the CCA.  The
18   Court further concludes that the petition in the CCA was not
19   timely and properly filed.  Accordingly, no petition was pending
20   during the interval between the SCSC's denial of the petition in
21   December 2010 and Petitioner's filing of a petition in the CCA.
22   Therefore, the statute was not tolled during this interval, and
23   the statute of limitations expired in January 2011 – long before
24   Petitioner filed his federal petition in April 2011.

25       The Court concludes that the petition filed in this action
26   was untimely filed.  Therefore, Respondent's motion to dismiss
27   the petition should be granted.
28   ///

1       VIII.   <u>Certificate of Appealability</u>

2       Unless a circuit justice or judge issues a certificate of

3  appealability, an appeal may not be taken to the Court of Appeals

4  from the final order in a habeas proceeding in which the

5  detention complained of arises out of process issued by a state

6  court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537

7  U.S. 322, 336 (2003).  A certificate of appealability may issue

8  only if the applicant makes a substantial showing of the denial

9  of a constitutional right.  § 2253(c)(2).  Under this standard, a

10 petitioner must show that reasonable jurists could debate whether

11 the petition should have been resolved in a different manner or

12 that the issues presented were adequate to deserve encouragement

13 to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336

14 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

15 certificate should issue if the Petitioner shows that jurists of

16 reason would find it debatable whether the petition states a

17 valid claim of the denial of a constitutional right or that

18 jurists of reason would find it debatable whether the district

19 court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>,

20 529 U.S. 473, 483-84 (2000).

21      In determining this issue, a court conducts an overview of

22 the claims in the habeas petition, generally assesses their

23 merits, and determines whether the resolution was debatable among

24 jurists of reason or wrong.  <u>Id.</u>  It is necessary for an

25 applicant to show more than an absence of frivolity or the

26 existence of mere good faith; however, it is not necessary for an

27 applicant to show that the appeal will succeed.  <u>Miller-El v.</u>

28 <u>Cockrell</u>, 537 U.S. at 338.

1    A district court must issue or deny a certificate of
2  appealability when it enters a final order adverse to the
3  applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

4    Here, it does not appear that reasonable jurists could
5  debate whether the petition should have been resolved in a
6  different manner.  Petitioner has not made a substantial showing
7  of the denial of a constitutional right.

8    Accordingly, it will be recommended that the Court decline
9  to issue a certificate of appealability.

10   IX.  <u>Recommendations</u>

11   Accordingly, it is RECOMMENDED that:

12   1) Respondent's motion to dismiss the petition be GRANTED;

13   2) The petition be dismissed as untimely filed;

14   3) The Court DECLINE to issue a certificate of
15 appealability; and

16   4) The Clerk be DIRECTED to close the action.

17   These findings and recommendations are submitted to the
18 United States District Court Judge assigned to the case, pursuant
19 to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of
20 the Local Rules of Practice for the United States District Court,
21 Eastern District of California.  Within thirty (30) days after
22 being served with a copy, any party may file written objections
23 with the Court and serve a copy on all parties.  Such a document
24 should be captioned "Objections to Magistrate Judge's Findings
25 and Recommendations."  Replies to the objections shall be served
26 and filed within fourteen (14) days (plus three (3) days if
27 served by mail) after service of the objections.  The Court will
28 then review the Magistrate Judge's ruling pursuant to 28 U.S.C.

§ 636 (b)(1)(C).  The parties are advised that failure to file
objections within the specified time may waive the right to
appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d
1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:     January 4, 2013**          _____/s/ Sheila K. Oberto_____
                                        UNITED STATES MAGISTRATE JUDGE